IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**FIRST MERCURY INSURANCE COMPANY**, an Illinois company,

    Plaintiff,

    v.

**WESTCHESTER SURPLUS LINES INS. CO.**, a Georgia company; **AIG PROPERTY CASULATY, INC.**, a Delaware company; **STRONGWELL CORPORATION**, a Virginia corporation; **MULTNOMAH COUNTY**, an Oregon municipality; **ZELLCOMP, INC.**, a Delaware corporation; **HARDESTY & HANOVER LLP,** a Delaware limited liability partnership; and **DOES 1-50**,

    Defendants.

Case No. 3:15-cv-00192-MO

OPINION AND ORDER

**MOSMAN, J.**,

    First Mercury moves for partial summary judgment on the basis that it has no responsibility for ZellComp's liability. Westchester has joined in First Mercury's motion. AIG, an intervener in the action, moved similarly for summary judgment and a declaration that it has no requirement to indemnify Multnomah County. Multnomah County moved for Summary Judgment seeking a judgment that First Mercury, Westchester, and AIG owe Multnomah County coverage for the liability ZellComp incurred in the state law suit. For the reasons set forth below I GRANT First Mercury's, Westchester's and AIG's Partial Motions for Summary Judgment [70, 71, 72] and DENY Multnomah County's Motion for Summary Judgment [74].

1 – Opinion and Order

## BACKGROUND

In 2011, Multnomah County retained Conway Construction Company to rehabilitate the Morrison Bridge. The County decided to replace the bridge deck using a fire reinforced polymer ("FRP") deck system rather than traditional steel decking. ZellComp, a subcontractor to Conway, was the owner and designer of the FRP Deck system and responsible for furnishing and designing the deck. ZellComp contracted with Strongwell to manufacture the FRP Deck for the project. Among other items, the companies outlined insurance coverage by contract stating "Strongwell shall at all times, at its own cost and expense, maintain. . .general liability insurance. . . .ZellComp will be listed as a Certificate Holder and as an Additional Insured." Dkt 55, Ex. B at 11.

After the bridge was reopened, it became clear that there were problems with the bridge decking system including cracking, chipping, corrosion, and excessive deterioration. Conway initiated a state law suit against ZellComp, Strongwell, and others seeking to recover repair costs. The County intervened. First Mercury, Strongwell's insurer, assumed the defense of Strongwell, as its named insurer, and ZellComp, under the "additional insured" endorsement of Stongwell's policy. The County was awarded $5,647,000 in damages. Strongwell was found negligent but responsible for 0% of the damages; ZellComp was negligent and responsible for 40% of the damages, or $2,258,800. The court entered judgment in favor of Strongwell. ZellComp agreed to a stipulated judgment with the County where ZellComp assigned its claim for coverage as an additional insured (excluding any extra-contractual claims) to the County.

First Mercury issued general liability coverage to Strongwell for 2011 and 2012. Westchester insured Strongwell during 2013 and 2014. AIG issued policies to Strongwell in

excess of First Mercury's and Westchester's primary policies. Collectively, I will refer to them throughout as the "insurers."

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

The parties disagree on whether ZellComp is covered as an "Additional Insured" and whether Oregon's statutes prohibiting indemnity apply here. Because the statute applies and invalidates any indemnification agreement, I do not reach the question of whether ZellComp qualifies as an additional insured but instead decide the issue on the statutory argument. Before reaching the merits of the argument, I address the choice of law issue presented in this case.

### A. Choice of Law

As an initial matter, the County argues the agreement between ZellComp and Strongwell includes a choice of law provision which calls for application of Virginia's law to this case and

presents a choice of law question. "When sitting in diversity, [federal courts] apply the choice-of-law rules of the forum state." *Coneff v. AT & T Corp.,* 673 F.3d 1155, 1161 (9th Cir. 2012). Under Oregon choice-of-law rules, the Court must determine as a threshold issue whether there is a material difference between Oregon law and the law of the other forum. *Waller v. Auto–Owners Ins. Co.,* 174 Or. App. 471, 475 (2001). Virginia has a similar anti-indemnification provision, but it is unclear that its application extends to the same type of "indirect" indemnity provision that the Oregon statute covers and at issue here. Thus, assuming *arguendo* that there is a material difference between the two anti-indemnity provisions, the choice of law analysis requires I must determine whether both states have substantial interests in having their laws applied. *Pulido v. United Parcel Serv. Gen. Servs. Co.,* 31 F. Supp. 2d 809, 813 (D. Or. 1998). I find that Virginia does not have a substantial interest in having its law applied to a case involving the construction of an Oregon bridge and where the application of Oregon law will not disadvantage the only Virginia party. *See Dabbs v. Silver Eagle Mfg. Co*., 98 Or. App. 581, 585, 779 P.2d 1104, 1106 (1989) (considering the effect of not applying a state's laws to its citizens in a choice of law analysis). "There is no true choice of law issue if, in a particular factual context, the interests and policies of one state are involved and those of the other are not or are involved in only a minor way." *Id.* at 1105. Therefore, Oregon law applies.

Oregon law states a construction contract may not include any provision that makes the construction contract subject to the laws of another state. ORS § 701.640. "Construction contract" in the context of choice of law statute means a "construction agreement . . . . relating to. . .creation or making of a building structure or superstructure . . . ." The County agrees that the term "relating to" is much more expansive than the term "for," at issue in the indemnification statute and addressed in this opinion. (Def. Multnomah County's Rply Brf. at 21.) Therefore,

4 – Opinion and Order

because the contract is a construction agreement under the more limited indemnification statute, I find that it is a construction contract under the broader choice of law statute. For this reason, the choice of law provision in the construction is invalid. The indemnification question is correctly analyzed under Oregon law.

      B. ORS § 30.140

The determinative issue for applying the statute is whether the agreement between ZellComp and Strongwell was a "construction agreement." ORS § 30.140 declares as void any indemnification agreement in a construction agreement requiring a person, or that person's insurer, to indemnify another for damage caused in whole or in part by the indemnitee. ORS § 30.140. The insurers argue this is a clear prohibition against forcing them to indemnify the County for the damages caused by ZellComp. The County argues the agreement between ZellComp and Strongwell is not a "construction agreement" and therefore § 30.140 does not apply.

A "construction agreement" is defined as "any written agreement for the planning, design, construction, alteration, repair, improvement or maintenance of any building, highway, road excavation or other structure, project, development or improvement attached to real estate including moving, demolition or tunneling in connection therewith." *Id.* Oregon created this statute "to prevent parties with greater leverage in construction agreements (generally, owners and contractors) from shifting exposure for their own negligence—or the cost of insuring against that exposure—to other parties (generally subcontractors) on a 'take-it-or-leave-it' basis." *Walsh Const. Co. v. Mut. Of Enumclaw*, 76 P.3d 164, 169 (Or. Ct. App. 2003). The Legislature wanted to prevent people higher up in the construction chain from "shov[ing] the insurance liability

5 – Opinion and Order

down the line to the guy on the bottom. . . ." *Montara Owners Ass'n v. La Noue Dev., LLC*, 353 P.3d 563, 569 (Or. 2015).

To support its position that the agreement was not a construction agreement, the County relies heavily on *Belmont Indus., Inc. v. Bechtel Corp.*, 425 F. Supp. 524 (E.D. Pa. 1976). The *Belmont* court was taxed with determining whether a Pennsylvania statute of limitations unique to construction agreements applied in that case. It declared a construction contract is a contract "in which the obligation to furnish materials, if present at all, is merely incidental to the main purpose namely, the assembling of the materials into a new, different and completed unit." *Id.* at 527. The County argues that under this definition, Strongwell did not have a construction agreement because it merely furnished materials and never performed installation, or any other type of work, on the Morrison Bridge. If *Belmont* is the litmus test for construction agreements, the County's argument might prevail. However, there is nothing to suggest that the logic of a forty-year-old Eastern District of Pennsylvania case, applying a hundred-year-old definition from the state of Pennsylvania is applicable to this situation. The definition of a construction agreement in *Belmont* is not a statutory definition similar to the one in Oregon nor was it created or used in the context of indemnification. Rather, the Pennsylvania definition is a common law creation for determining whether a statute of limitations applies. In short, while *Belmont* uses the words "construction contract," there is little beyond those words to suggest its application to this case is prudent. The County also offers *Proto Construction & Development Corp. v. Superior Precast, Inc.* to show that even specially manufactured building parts can be subject to the UCC. 2002 WL 1159593, at *4 (E.D.N.Y. May 28, 2002). However, it does nothing to show an agreement cannot both be a sale of goods and also a construction agreement subject to

6 – Opinion and Order

Oregon's indemnity statute.  The County offers no case law from Oregon to bolster these two cases.

Indeed, neither party offers an Oregon case interpreting the definition of construction agreement.  In the absence of strong case law on either side, the breadth of the statutory language and the facts of this case both suggest Strongwell entered into a "construction agreement." At its broadest, the agreement need only be "for" the "improvement" of a structure on real property. ORS § 30.140.  The County argues ZellComp's agreement cannot be for the improvement of a structure because it was for the sale of goods.  To support this argument, they offer Section 2 of the contract, entitled "Sale of Goods," and point to the receipts for the transaction which show only the manufacturing of the part, not installation or engineering.  However, this argument assumes an agreement for a sale of goods cannot be a construction agreement for the improvement of a structure.  Nothing in the statute suggests as much.  Certainly, there may be a dividing line where a sale of goods would no longer be captured by the statute's definition of a construction agreement.  For example, it is more difficult to see how the person who contracts to sell nails to a construction company can be said to be making a contract for the improvement of a structure. But the facts here are precisely the opposite.

In particular, the facts of our case illuminate a better test than the "sale of goods" test offered by the County.  The sale of goods can still be for the improvement of a structure where a *specific* structure is contemplated.  The most obvious example of this specificity is customization.  A customized part, by its nature, indicates that the contractors considered it for the improvement of a particular structure.  Here, Strongwell was asked to provide a specific output that had been designed for the Morrison Bridge.  Most importantly, attachments to the Agreement provide confidential specifications distinct to the Morrison Bridge project which

7 – Opinion and Order

Strongwell needed to complete the contract. Several other aspects of the contract and Strongwell's responsibilities indicated the agreement was for the improvement of the Bridge and support the conclusion this was a "construction agreement" under the meaning of the statute. As part of the contract, Strongwell agreed to letters and certifications which acknowledged the construction of the structure had been done in compliance with Oregon law—something only a construction for improvement of a structure would need. Additionally, the agreement indicated that Strongwell would do more than manufacture—it would "provide engineering output and suggestions. . . ." Strongwell employees made at least one trip to the job site to discuss and observe the construction. ZellComp hired Strongwell to manufacture the FRP Deck for the Project; there is no question that the Deck was customized to the Bridge and intended to improve the Bridge. Thus, the agreement is a construction agreement and the prohibition of O.R.S. §30.140 apply. The County argues this interpretation rewrites the definition from "for" the improvement to "relating to" the improvement of a structure. However, to the extent that concern is valid, customization again cures the problem as one customizes a component *for* a structure.

## CONCLUSION

The broad wording of the statute's definition of construction agreement, the clean fit of the purpose of the statute, and the facts of the case including the contracted customization, design consultation, and compliance specifications show the Agreement between ZellComp and Strongwell was a construction agreement. Because it is a construction agreement, §30.140 does apply, and ZellComp "may not recover under the [subcontractor's insurance policies] for any damages that resulted from its own fault or negligence." *MW Builders, Inc. v. Safeco Ins. Co. of Am.,* No. CIV. 02-1578-AS, 2004 WL 2058390, at *10 (D. Or. Sept. 14, 2004); *see also, Walsh Constr. Co. v. Mut. of Enumclaw,* 338 Or. 1, 9, (2005) ("The statute prohibits not only 'direct'

indemnity arrangements between parties to construction agreements but also 'additional insured' arrangements by which one party is obligated to procure insurance for losses arising in whole or in part from the other's fault").   Because the previous jury verdict found that ZellComp's negligence caused the damages, the indemnity clause of the agreement is void.  I GRANT First Mercury's, Westchester's and AIG's Motions for Partial Summary Judgment [70, 71, 72] and DENY the County's Motion for Summary Judgment [74].

DATED this __27th__ day of January, 2016.

                                              /s/ Michael W. Mosman_____
                                              MICHEAL W. MOSMAN
                                              United States District Judge